UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NAOMI REED, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

ZIPCAR INC.,

    Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Naomi Reed, by and through her attorneys, brings this action on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own acts, and upon information and belief following investigation of her attorneys, against Defendant Zipcar Inc. ("Zipcar"), stating as follows:

### I. INTRODUCTION

1. Zipcar provides self-serve car rental services to customers in the United States including in metropolitan areas such as Boston, New York City, Chicago, and elsewhere. Customers who pay an application fee and annual Zipcar membership fee may reserve an available car by selecting a car in Zipcar's fleet to rent in half-hour multiples or by the day.

2. Zipcar imposes a late fee of $50 per late hour in addition to the regular per-hour fees for use of any vehicle past the end time of a reservation. Zipcar has a minimum late fee of $50, which Zipcar imposes and uses to pad its revenues or profits even if a customer is only one minute late in returning their vehicle.

3. Plaintiff asserts that Zipcar's practice of imposing severe late fees on its customers is unlawful, and thus seeks declaratory relief, restitution and damages for herself and the putative Class of Zipcar customers defined below.

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff, Naomi Reed, is a citizen of the State of New York. In approximately September 2006, Plaintiff became a Zipcar customer by paying the requisite Zipcar application fee and fulfilling the obligations required of her pursuant to Zipcar's standardized customer contract ("the Contract"). Since becoming a member, Plaintiff has incurred customer late fees at issue in this case.

5. Zipcar is a domestic corporation with its principal place of business in Boston, Massachusetts, where transactions or conduct giving rise to Plaintiff's claims occurred and where Zipcar routinely does business. Zipcar made or was likely to have made key decisions regarding its late fee practices from its home offices in Massachusetts.

6. The Court has original jurisdiction per 28 U.S.C. § 1332.

7. Venue is proper before the Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c) because Zipcar resides in this judicial District and is subject to personal jurisdiction in this judicial District. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions at issue occurred in this judicial District and at relevant times Zipcar maintained its principal place of business in this judicial District. Further, Zipcar's customer contract provides that Plaintiff, the putative Class members and Zipcar have consented to jurisdiction and venue in this Court.

## III.  SUBSTANTIVE ALLEGATIONS

### A.  Nature of Zipcar's Business

8.  Zipcar is in the business of providing cars to consumers, who must buy a membership in order to use Zipcar's services.  To become a member, consumers must pay a $25 application fee and a $50 annual membership fee.

9.  After becoming Zipcar members, customers have a fleet of Zipcar cars to choose from which are parked in various third-party parking garages.  To reserve a car, the customer logs-in to Zipcar's website or calls Zipcar, designates the start and end times to the nearest half-hour, and selects a car and location.  The car is then available for use by the customer, who can unlock the car using the customer's one-size-fits-all magnetic key-card.

10.  Zipcar automatically debits monies and charges from customers' bank accounts per reservation, and charges them an hourly rate per car rounded to the nearest half hour (or a daily rate), with gas and insurance included.  Hourly rates have typically varied from around eight to thirteen dollars, plus applicable state or municipal taxes applicable to rental cars.

11.  Zipcar makes cars available for rental in locations in close proximity to each other in metropolitan areas.  Zipcar employs technology enabling it to remotely track vehicles and reservations including miles traveled, vehicle location, pending reservations, and other details, and which also enables Zipcar to have protocols in place to systematically impose the late fees at issue.

12.  Zipcar conducts or receives market research or surveys to gauge customer demands or habits.

13.  A relatively new and immensely successful business, Zipcar has grown in membership remarkably quickly, having doubled or tripled in size annually since start-up in the

year 2000. There are more than 400,000 Zipcar members. Zipcar SEC Form S-1, available at http://www.sec.gov/Archives/edgar/data/1131457/000119312510160406/ds1a.htm (last visited July 27, 2011).

14. Zipcar offers two varieties of membership plans to suit different customer needs, *i.e.* the Occasional Driving Plan and the Extra Value Plan. Zipcar charges customers in both Plans with the same late fees at issue.

15. Zipcar describes its Occasional Driving Plan as its plan "for new members and first time car sharers." http://www.zipcar.com/boston/check-rates (last visited July 27, 2011). Zipcar further describes this plan as "you pay as you go." *Id.*

16. Zipcar describes its Extra Value Plan as its plan "for frequent drivers and people using Zipcars as a primary mode of transportation." *Id.* The plan has "four monthly commitment amount options of $50, $75, $125, and $250." *Id.* Zipcar further describes this plan as "[s]imply put, you save more money if you drive more." *Id.*

17. Between approximately late 2006 and early 2007, Plaintiff signed up for the $50 Extra Value Plan ("Plan"), whereby she paid a $25 application fee and thereforth pre-paid at the start of every month a monthly commitment of $50. Plaintiff is then given $50 in driving credit, and once that amount is used up she would pay hourly or half-hourly as she goes. Any remainder of the $50 not used in a month is not rolled over to the following month.

18. Zipcar's customer accounts for Plaintiff and other customers are set up so that their credit or debit cards are billed automatically by Zipcar for charges incurred; Zipcar thus routinely collects monies from them without consent for any particular charges, including late fees, as the charges are imposed. Instead, Zipcar has *carte blanche* to charge and take money from Plaintiff and other customers' financial accounts as it deems appropriate.

### B. Zipcar's Late Fee Charges

19. Zipcar has late fees built-in to its contract that are the subject of this action, and which unfairly and unconscionably penalize its customers. The late fees, which Zipcar dubs "penalties," provide a desirable revenue stream for Zipcar.

20. Though most of the charges are provided for under the customer contract, customers are not often aware that they have been debited a late fee charge because Zipcar provides no separate notice of charges and does not send customers a monthly statement or bill by mail or by email. However, Zipcar keeps computerized records of charges incurred by its customers including Plaintiff.

21. Zipcar automatically charges customers a late fee, which at relevant times it has described on its website and in Plaintiff's bills as a "penalty," for returning a car after the ending time of the reservation.

22. The late fee, which is a minimum of $50.00, is *in addition* to regular per-hour fees, assessed automatically by Zipcar, for use of the vehicle past the end time of the reservation.

23. Thus, under Zipcar's late fee policy, a car that is returned one minute late is *subject to* a $50 late fee; a car that is returned one hour late is subject to a $50 late fee; a car returned one hour and one minute late is subject to a $100 late fee; and so on with an additional $50 being charged per any portion of a late hour.

24. Zipcar's late fee policy can result in a customer paying three times the amount of a full day's rental and above when adding late fee charges to the regular daily rental fees.

25. Plaintiff incurred a late fee of $50.00 on May 14, 2009 for returning a Zipcar vehicle 13 minutes late. On July 22, 2009 Plaintiff again incurred a late fee of $50, this time for returning a Zipcar vehicle 41 minutes late. Plaintiff never agreed to incur or pay for these

particular late fees, and Zipcar did not independently seek her permission to levy the May 14 and July 22 charges, but rather, Zipcar automatically debited Plaintiff's credit or debit card to collect these fees. Class members similarly incurred late fees and are reasonably likely to incur late fees as they continue to use Zipcar.

26. Zipcars are sometimes reserved back-to-back, *i.e.,* when a different customer has a reservation pending just after a prior customer's reservation for the same car is complete. But Zipcar's policy has been to debit the same late fee (for the same amount) irrespective of whether a subsequent reservation is pending.

27. Zipcar allows customers to extend reservations at the regular hourly or half-hourly rate, via a process that requires them to contact Zipcar online or by phone prior to the end of the reservation, which cannot safely be done while driving. But, reservations can be reasonably extended as such only in those instances when no subsequent reservation is pending and when the customer has the means, knowledge, anticipation, awareness and/or ability to proactively and safely extend the reservation.

28. Once the car is one minute past the reservation end-time, the customer can no longer choose to extend the reservation or avoid the late fee, because by that time Zipcar has as a matter of policy and automatically, via computer, already assessed the late fee penalty to the customer.

29. Zipcar's website has not at relevant times described the late fee as a re-rental fee or as the equivalent of a new reservation or a separate contract. To the contrary, Zipcar continues to charge regular hourly or half-hour use rates for vehicles for the duration they are used after the end-time of the reservation, in addition to the late fee.

30. While Zipcar's reservation system provides a variety of automated purchase options, Zipcar has not elected to provide customers with an option – at the time the reservation is made – to have the reservation automatically extended at the reservation end-time, *e.g.,* if the vehicle is not yet returned and if no subsequent reservation is pending. Zipcar's "high-tech" computer systems for scheduling and reserving vehicles feasibly enable Zipcar to provide this option, or to limit late fees to instances in which no subsequent reservation is pending. Zipcar's decision not to provide such an option or to so limit its late fees enables Zipcar to recover a substantially greater volume of exorbitant late fees, and to charge the late fee even when no subsequent reservation is pending – which pads Zipcar's pockets and demonstrates the punitive nature of the late fee and the profit motive behind it.

    **C.**    **The Customer Charges Are Unlawful**

31. The above-described late fees unfairly penalize customers for breaching its terms.

32. The late fees are a source of substantial revenue for Zipcar, and are intended to induce customers to do business with Zipcar as intended by Zipcar, rather than to compensate Zipcar for anticipated losses due to late returns.

33. The late fees are arbitrary and capricious relative to any costs or losses that Zipcar incurs or can reasonably anticipate in connection with the aforementioned facts triggering each late fee, and are not a reasonable estimate of the actual or probable losses incurred by Zipcar.

34. The late fees are disproportionate to Zipcar's anticipated damages to an extent so as to constitute an illegal penalty.

35. For example, Zipcar's website has plainly described its late fee as a "penalty," *i.e.,* levied in order to induce compliance with agreed-upon reservation times. Zipcar thus admits that its late fee is not intended to recover anticipated damages.

36. For example, Zipcar charges the same late fees regardless of whether a reservation is pending after the reservation end-time, and despite the fact that Zipcar's profits increase from late returns in the many instances in which a vehicle is returned late when a subsequent reservation is not pending, because no customer can be delayed by the late return. Nor does Zipcar tier the late fee to delineate between time periods of late returns when a subsequently-scheduled vehicle reservation is and is not pending.

37. For example, Zipcar automatically, by default, imposes the same $50.00 late fee even in situations when the anticipated damages from a late return, if any, would be much less or minimal – *e.g.,* even when a car is returned only one minute late, and even when no customer with a subsequent reservation has contacted Zipcar to complain that the vehicle is unavailable.

38. For example, Zipcar's late fee arbitrarily doubles to $100.00 as soon as an untimely return reaches or passes the one-hour mark, despite the fact that Zipcar's losses from a late return do not double at the one-hour mark. Anticipated customer dissatisfaction, if any, and labor costs for redirecting a customer who subsequently reserved the same vehicle, for example, do not or are not likely to double at the one-hour late return mark, but rather, are likely to be the same if the vehicle is returned 45 minutes late, for example.

39. For example, Zipcar continues to debit the customer the regular half-hour or hourly rates for ongoing use of the vehicle past the reservation end-time, in addition to debiting late fee(s), so that Zipcar does not lose revenues due to lost reservations during the time in which the vehicle is late. The cost of ongoing use of the vehicle, therefore, cannot be built-into the late

fee; Zipcar already absorbs these costs by continuing to debit the regular use fee during late returns.

40. In the event that a vehicle is not available to a customer who has reserved that vehicle, Zipcar diminishes adverse effects from late returns by redirecting the customer to an alternative vehicle at the same or a nearby location. Zipcar clusters vehicles in locations close to each other. Due to the automated access the customers and Zipcar customer service representatives have to Zipcar vehicle schedules and locations, such re-direction is not an arduous process and can take only a few minutes of Zipcar's time.

41. Zipcar minimizes labor costs associated with dealing with late returns by charging a $3.50 fee to customers who wish to speak to a live customer service representative to attempt to extend a reservation. The staff that Zipcar utilizes to field customer calls regarding late returns or subsequent reservations are customer service representatives whose job it is to field such calls, are located in offices in Central Illinois, and are likely to be paid at customer service or call center market rates not greatly in excess of minimum wage rather than as highly paid professionals.

42. Additionally, late fees imposed by similar car sharing businesses are not nearly as exorbitant or penal in nature as Zipcar's.

43. For example, the competitor car sharing company I-GO, which provides service in locations where Zipcar provides service, and caters to customers and markets which are the same as Zipcar customers and markets, has at relevant times imposed a $20 late fee and then $10 fee per late half hour. I-GO has given customers an opportunity to avoid late fees altogether if the customer calls I-GO thirty minutes prior to the scheduled reservation end-time to extend the

reservation. I-GO allows customers to avoid the late fee even where another customer is waiting to use the same vehicle.

44. Mint is a New York based car sharing service similar to Zipcar. Mint also operates their service in Boston, where Plaintiff utilized Zipcar. Mint does not charge any late fees so long as a customer calls a Mint representative to extend the reservation. The Mint late fee is only $12.50 per half hour, in addition to hourly use rates. Mint imposes the fee only when the customer fails to call a Mint representative to extend the reservation and there is a customer waiting. Where no customer is inconvenienced Mint only charges the regular hourly or half-hourly usage rates. Additionally, Mint gives a 15 minute grace period and any late fees or extended usage fees will only be imposed on the sixteenth minute of lateness.

45. U Car Share is a car share service similar to Zipcar with fleets available in Massachusetts, including in Worcester and Weston, Massachusetts, near Boston, where Plaintiff reserved her Zipcar vehicles at relevant times. Unlike Zipcar, if a U Car Share customer is running late and calls a U Car Share representative prior to the expiration of the reservation, U Car Share will only charge a late fee if there is a pending reservation by another U Car Share customer. Unlike Zipcar too, even if there is a pending reservation, U Car Share will allow the late customer a fifteen minute grace period prior to imposing a fee. If the customer does not call a U Car Share representative prior to the expiration of the reservation or if the customer does call but there is a pending reservation then there is a five minute grace period and if that shorter grace period has expired, then U Car Share imposes a $25 late fee and any hourly or partial charges incurred for extra use of the car.

46. Additionally, in October of 2007 Zipcar merged with competitor Flexcar. Prior to the merger Flexcar charged a $25 fee and permitted a grace period for late returns. After

the merger Zipcar abruptly doubled the late fee to its current $50 per late hour fee for all Flexcar customers and vehicles absorbed in the merger without explanation or justification.

47.     Zipcar knows and/or should know that the charges it collects do not gauge, and exceed the damages that could be reasonably expected from late returns and the aforementioned facts.

48.     Late fees give a windfall to Zipcar insofar as they are penalties that over-compensate Zipcar for any actual (or anticipated) loss, in violation of the common law and public policy.

49.     Additionally, Zipcar levies its late penalty despite being able to anticipate its losses due to the conduct precipitating the penalty. This is especially true given the automated nature of Zipcar's business model. For example, Zipcar collects or keeps relevant marketing data, keeps data enabling it to understand Zipcar member retention, keeps data regarding its late fees and reservations (*e.g.,* when, how often, and how many reservations and late fees are made or imposed), records when late returns do and do not conflict with subsequent vehicle reservations, and can record or gauge labor or customer service costs pertaining to dealing with customers who have a late return or a subsequent reservation (or redirecting customers to another vehicle).

50.     Late returns have the effect of increasing Zipcar's revenues and profits, rather than causing Zipcar damage.

51.     The more vehicles from Zipcar's fleet of vehicles that are in use at any one time, the greater Zipcar's profit.

52.     In the event that a customer *is* waiting for a late vehicle and another vehicle is available nearby, Zipcar redirects the waiting customer to the available vehicle and actually

11

profits more than if the late vehicle was not returned late. Zipcar generally has cars available at the same or nearby locations as cars in use. The cost of redirecting the waiting customer is negligible given the automated nature of Zipcar's reservation system. Once a waiting customer is redirected, Zipcar then has two vehicles in service and is charging two customers for use at the hourly rate where there would have been only one vehicle in use. Without lateness Zipcar would have been charging only one customer usage fees. The lateness produces additional profits for Zipcar from usage fees prior to Zipcar's imposition of any late penalty.

53. Overall, increased usage from lateness is thus likely to increase Zipcar profits. This makes the "late penalty" a true profit windfall with no basis in losses, costs or lowered profits based on customer lateness.

54. Additionally, the longer a Zipcar vehicle is in use, the greater Zipcar's profit.

55. In the event that a customer *is not* waiting for the late vehicle, Zipcar also increases profits when a driver is late merely by continuing to impose hourly or half-hourly usage fees. By contrast, in lieu of late returns when no customer is waiting, Zipcar would recoup no profits because the vehicle would otherwise be idle.

56. The financial detriment Zipcar might experience from lateness occurs where a waiting customer is inconvenienced to the point of canceling their Zipcar membership. Customer retention is not difficult to determine. Zipcar should, in the regular course of business, keep records of which customers have been inconvenienced by previous users' late vehicle returns and of customers who have left Zipcar. By cross referencing those lists, Zipcar can easily forecast costs or lost profits due to customer departures associated with lateness.

57. Zipcar also keeps data to gauge anticipated losses that will show exactly how customers with reservations who are waiting for returns respond to a late return – e.g., how many

customers cancel their reservation, the average length of or revenue anticipated from the subsequent reservation, if customers use the reserved but late-returned vehicle, or if customers are successfully redirected to another reservation.

58. Thus, the late penalty is a mechanism to increase profits, grossly disproportionate to any alleged damages. Further, alleged damages are easy to determine and the $50 per hour late penalty is not a reasonable forecast of expected damages.

59. Zipcar automatically debits the late fees from customer credit cards to its benefit, but to its customers' financial detriment. Through the actions described above, Zipcar has damaged individuals, including Plaintiff and the putative Class, to an extent to be determined at trial.

60. As a result, the Zipcar customer contract and/or provisions therein for such late fees are void and unenforceable.

## IV. CLASS ALLEGATIONS

61. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23, on behalf of all Zipcar customers who have incurred Zipcar late fees at the presently imposed rates. Excluded from the Class are Zipcar's officers and employees, Plaintiff's counsel, any member of the judiciary presiding over this action, and their immediate families.

62. Plaintiff reasonably believes that each Class is so numerous as to make joinder of all members impracticable.

63. Questions of law and fact common to the Class members predominate over questions affecting only individual Class members and include as follows:

    a. Did Zipcar automatically debit late fees from the bank or credit card

accounts of Plaintiff and the Class?

b. Are the late fees (or a portion thereof) unlawful penalties under Massachusetts law?

c. Does imposition of the late fees violate applicable common law?

63. Plaintiff's claims are typical of those of the Class members. Moreover, defenses, if any, that may be asserted against Plaintiff's claims are typical of defenses, if any, that may be asserted against other Class members' claims.

64. Plaintiff will fairly and adequately protect the Class members' interests, has no interests antagonistic to the community interest of the Class members, and has retained counsel experienced in class action litigation.

65. A class action provides a superior means than other methods for the fair and efficient adjudication of this controversy because, among other things:

- Zipcar's relevant policies and late fees are equally applicable to Plaintiff and the putative Class members;
- joinder of all Class members is impracticable;
- many members' damages are small relative to the burden and expense of prosecuting an individual claim, particularly given the resources available to Zipcar—so that absent a class action many class members will have no means to prosecute their claim; and
- pursuant to Zipcar's contract and thus by Zipcar's design, the Class members' claims are subject to a single State's law—Massachusetts.

## V.   CAUSES OF ACTION

66. Plaintiff alleges the following causes of action individually and on behalf of the Class as pleaded, and as necessary alleges the following in the alternative to the fullest extent permitted by law.

### COUNT I

### Unjust Enrichment

67. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count I on behalf of herself and the Class.

68. Provisions in Zipcar's customer agreement pursuant to which Zipcar imposes the late fees are void and unenforceable, and Zipcar has thus been wrongfully and unjustly enriched by employing the use of its void late fee provisions and member agreement, as more fully set forth above.

69. By paying money under void and illegal contracts or contract terms, Plaintiff and the other members of the Class conferred a benefit upon Zipcar, which Zipcar unjustly retained.

70. It is against equity and good conscience to permit Zipcar to retain the profits and benefits it has received as a result of its wrongful practices described above.

71. Zipcar should account for all late fees improperly collected and withheld, should have a constructive trust imposed on said monies received, and should be enjoined from its use of the above-described contracts, contract provisions and/or late fee schedules, until further order of the Court.

72. Further, as a result of Zipcar's improper conduct, Plaintiff and other Class members are entitled to disgorgement and restitution of Zipcar revenues, profits and monies received from all late fees.

## COUNT II

### Money Had and Received

73. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count II on behalf of herself and the Class.

74. Zipcar received monies for late fees belonging to the Plaintiff and the other Class members, and Zipcar benefited from receipt of the monies, as described above.

75. Under principles of equity and good conscience, Zipcar should not be allowed to keep such monies.

## COUNT III

### Declaratory Judgment

76. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count III on behalf of herself and the Class.

77. As set forth above, Zipcar's customer contract provisions providing for imposition of the late fees are void, unenforceable, and unconscionable as set forth herein; and/or Zipcar is not entitled to impose late fees as a matter of law.

78. Despite this, Zipcar has enforced its late fee penalty policy, and continues to impose the late fee as described above.

79. Zipcar has interests adverse to Plaintiff and the other Class members, in that, by having a policy of debiting late fees from Class member credit cards or financial accounts in the

matter set forth above, pursuant to a policy and contract provisions that Plaintiff contends are unlawful, void, and unenforceable, and which Zipcar contends are not, Zipcar benefits at their expense.

80.   Plaintiff and the putative Class members have substantive legal interests in the value of their Zipcar contract, in late fees that Zipcar debited from their accounts, and/or in the ongoing use of Zipcar consistent with the protections of applicable law.

81.   Plaintiff and the Class are entitled to a declaration of rights regarding late fees they incurred and/or are reasonably likely to incur.

82.   Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

83.   Plaintiff requests that the Court declare the late fees to be void and unenforceable, unconscionable, and/or illegal penalties, in violation of the common law, and disgorge and/or refund late fees recouped from Plaintiff and the Class or profits thereon.

84.   Plaintiff further requests that the Court enjoin Zipcar from continuing to levy and debit late fees, require Zipcar to adequately notify its members of any late fees that the Court does not deem unlawful, and provide any additional relief that the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, prays that the Court enter judgment in favor of Plaintiff and against Zipcar as follows:

A.   Enter an order certifying the Class defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

B.   Find that Zipcar is in violation of applicable law;

C.   Award restitution to Plaintiff and the Class;

      D.      Establish a constructive trust consisting of late fees improperly collected and withheld, until further order of the Court;

      E.      Order that Zipcar disgorge, and/or refund for the benefit of Plaintiff and the Class, monies, revenues and/or profits Zipcar received from its imposition of the late fees;

      F.      Declare that Zipcar's late fees, customer contract and/or provisions giving rise to late fees are void, unenforceable, and/or unconscionable under applicable law;

      G.      Award reasonable attorney's fees and costs; and

      H.      Provide such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury for all matters complained of herein that are so triable.

      NAOMI REED, on behalf of herself and all others similarly situated
By her attorneys,

      / s / Eugene R. Richard
Howard J. Wayne, Esq. / BBO No. 518160
Eugene R. Richard, Esq. / BBO No. 546781
WAYNE, RICHARD & HURWITZ LLP
Boston, MA 02108
617-720-7870

Noah Shube (*pro hac vice application forthcoming*)
LAW OFFICES OF NOAH SHUBE
434 Broadway, Sixth Floor
New York, NY 10013
212-274-8638

Ilan Chorowsky (*pro hac vice application forthcoming*)
Mark Bulgarelli (*pro hac vice application forthcoming*)
Alex Stepick (*pro hac vice application forthcoming*)
PROGRESSIVE LAW GROUP LLC
505 N. LaSalle, Suite 350
Chicago, IL 60654
312-787-2717