```
                    United States District Court
                      District of Massachusetts
_____
                              )
NAOMI REED, on behalf of herself )
and all others similarly      )
situated,                     )
        Plaintiff,            )   Civil Case No.
                              )   11-11340-NMG
        v.                    )
                              )
ZIPCAR, INC.,                 )
        Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Naomi Reed ("Reed") brings this putative class action against defendant Zipcar, Inc. ("Zipcar") alleging that certain fees charged to members of the rental car service are unlawful.  Before the Court is Zipcar's motion to dismiss.

I.  **Background**

   A.  **Zipcar**

Zipcar provides a car-sharing service in major metropolitan areas, including Boston, Chicago, New York, Los Angeles and Washington, D.C.  Members have access to Zipcar vehicles, located in reserved parking spots at designated locations throughout each city, for as short a time as one hour or as long as several days. Zipcar's self-service model directs members to pick up and return vehicles at the times and places specified in their reservation.

If the reservation proceeds without incident, a member is charged the hourly rate plus taxes.

To "join" Zipcar, prospective customers must apply and sign a membership agreement ("the Membership Agreement"), under which they agree to pay an annual membership fee and an hourly rate for each reserved vehicle. Members also agree that they will pay a late fee if they fail to return a car on time and may be liable for other charges as described in the Membership Agreement.

### B. Blay v. Zipcar, Inc. (09-cv-11683)

On October 7, 2009, Ryan Blay, an Illinois citizen and Zipcar customer, filed a Class Action Complaint ("The Blay Complaint") against Zipcar in this Court. The dispute arose out of Blay's dissatisfaction with the following charges:

> 1) a $3.50 charge for reservations, extensions or cancellations made by phone with a live Zipcar representative;
>
> 2) an automatic fee charged whenever a customer receives a parking or traffic ticket processed by Zipcar;
>
> 3) escalating late fees, starting at $50, imposed when a car is late and regardless of whether the vehicle has been reserved in the following time slot;
>
> 4) a fee charged to customers who leave belongings in a vehicle and do not retrieve them within three hours; and
>
> 5) a $20 monthly charge for inactive accounts.

Blay characterized the charges as unlawful penalties and alleged that they significantly exceeded any actual costs borne by Zipcar in relation to the subject events. He sought declaratory and

injunctive relief, restitution and damages on behalf of himself and other Zipcar customers who had incurred such charges.

After oral argument, this Court allowed Zipcar's motion to dismiss the Blay Complaint for failure to state a claim upon which relief can be granted. The pleading deficiency identified by the Court was plaintiff's failure to support his claim that the charges were "excessive, arbitrary and disproportionate." Instead of basing his claim on specific allegations, plaintiff relied solely on his intuition and "the smell test." Leaving open the possibility that plaintiff might be able to state a colorable claim for relief if, for example, he were

> [to] allege facts in support of his contention that [f]ees similar to [Zipcar's] imposed by similar vehicle rental businesses are not nearly as exorbitant,

the Court dismissed the Blay Complaint without prejudice. Though afforded the opportunity, plaintiff did not amend the Blay Complaint and the case was closed in June 2010.

### C. This Action

On July 27, 2011, Naomi Reed, a New York citizen and Zipcar customer, filed this putative class action in this Court. The case was initially assigned to United States District Judge Richard Stearns but was transferred to this Session when it became apparent that the claims were substantially the same as and arose out of substantially the same facts as the claims brought in Blay v. Zipcar, Inc.

The Amended Complaint ("the Reed Complaint") states claims for unjust enrichment, money had and received and unfair and deceptive acts and practices and seeks 1) restitution, 2) actual and treble damages, 3) a declaratory judgment that the late fees are void and unenforceable, 4) an injunction enjoining Zipcar from levying late fees and 5) attorneys' fees and costs.  Reed claims that she incurred late fees on two occasions when she returned her rented vehicle after the time prescribed.  Unlike Blay, Reed focuses solely on Zipcar's late fee policy and does not object to the litany of other charges referenced in the Blay Complaint.  Seeking to cure the pleading deficiencies identified by this Court, Reed identifies four competitors that charge late fees which are roughly one-half of the $50 fee imposed by Zipcar and proposes alternate ways in which Zipcar could deter late returns without resorting to such an exorbitant penalty.

In November 2011, Zipcar moved to dismiss the Reed Complaint. The motion is opposed and is currently pending before the Court.

## II. Motion to Dismiss

### A. Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Assessing plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether the well-pled facts alleged in the complaint are sufficient to "permit the court to infer more than the mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950. In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

**B.  Application**

This Court does not write on a blank slate.  In ruling on the motion to dismiss the Blay Complaint, it addressed the issue, revived here, of whether Zipcar's late fees constitute an unlawful penalty or, instead, are more properly characterized as a valid and enforceable liquidated damages clause.  This Court's discussion of that issue in Blay does not bind the Court here because the Reed Complaint contains amended allegations.  It is, nevertheless, a sensible place to begin.

This Court concluded in Blay that Zipcar's late fees, while "severe," are not an unlawful penalty because,

> Zipcar is in the car-sharing business and, in order for it to operate effectively, the company is entitled to deter customers from returning cars late.  The obvious reason, as Zipcar states, is that quite often members reserve vehicles back-to-back.  In such situations, as noted in the complaint, if a vehicle is returned late,

> Zipcar's policy is to direct the customer whose car is not available on-time to another vehicle nearby. Of course that causes Zipcar to suffer a loss, contrary to Blay's cursory contention. At the very least, Zipcar must, for example, pay an agent to deal with the two customers and must incapacitate a second vehicle. More abstractly, the service would not be as attractive to members if they risked repeatedly arriving for a reservation only to find that the car was missing.

This Court was skeptical of Blay's unlawful penalty claim and was not optimistic that supplemental allegations would have any bearing on its viability. It nonetheless dismissed the Blay Complaint without prejudice, in an abundance of caution, to provide the plaintiff a second opportunity to state a colorable claim. The question before this Court today is whether Reed, pinch hitting for Blay, succeeded in doing so.

The Court turns to the amended allegations. To support her claim that the late fees are an unlawful penalty, Reed compares the late fees charged by Zipcar to late fees charged by Zipcar's competitors. She alleges that the companies I-GO, Mint, U Car Share and Flexcar, all of which provide similar car sharing services in the same or similar markets, charge substantially lower late fees and impose them only after a grace period and if a subsequent reservation is pending. Reed contends that Zipcar's late fees are grossly disproportionate to the damages caused by a customer's breach and designed not to compensate Zipcar for the costs of late returns but to provide an alternate revenue stream in addition to membership and hourly usage charges. She proposes

alternatives to avoid fees, such as automatically extending reservations if a vehicle is not returned and no subsequent reservation is pending, as well as methods to lower the fee amount, such as forecasting the actual costs of late returns and adjusting downward the late fee accordingly.  Reed concludes from the harshness of the fees themselves and the availability of feasible alternatives that Zipcar's late fees 1) are an unlawful penalty, 2) unjustly enrich Zipcar at the expense of its customers and 3) constitute an unfair and deceptive practice, in violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A § 2(a).

### 1.   **Unlawful Penalty**

The "unlawful penalty" doctrine provides that a liquidated damages clause, i.e., a clause calling for the payment of a particular sum as compensation for breach of contract, is unenforceable if it is grossly disproportionate to a reasonable estimate of actual damages. TAL Fin. Corp. v. CSC Consulting, Inc., 844 N.E.2d 1085, 1092 (Mass. 2006).  The doctrine is most commonly asserted as an affirmative defense to the enforcement of a liquidated damages clause. E.g., Honey Dew Assocs., Inc. v. M & K Food Corp., 241 F. 3d 23, 26 (1st Cir. 2001); TAL Fin. Corp., 844 N.E.2d at 1092.  The question is whether it stands alone as an independent cause of action.

While Massachusetts courts have not been called upon to

resolve that issue, most courts interpreting similar state laws have ruled that "there is no affirmative cause of action based on a claim of unlawful liquidated damages or penalty. Such a claim is merely a defense to enforcement of the penalty." Horne v. Time Warner Operations, Inc., 119 F. Supp. 2d 624, 630 (S.D. Miss. 1999); see also Minnick v. Clearwire US, LLC, 683 F. Supp. 2d 1179, 1185 (W.D. Wash. 2010) ("[A]sserting that a fee is an unlawful penalty is a defense to enforcement, not an affirmative cause of action."); cf. Cowin Equip. Co., Inc. v. Gen. Motors Corp., 734 F.2d 1581, 1582-83 (11th Cir. 1984) (concluding that no independent cause of action lies for the enforcement of an unconscionable contract provision).

This Court is loath to endorse a claim for relief heretofore unrecognized by Massachusetts courts, especially in light of the present consensus against its recognition as an independent cause of action and the existence of other claims which could, in theory, provide Reed with the relief she seeks. See Markle v. HSBC Mortg. Corp. (USA), No. 10-40189-FDS, 2011 WL 6944911, at *8 (D. Mass. Jul. 12, 2011) (declining a similar invitation to do so in the mortgage fraud context).  If it is any consolation, Reed's "unlawful penalty" claim would very likely have been dismissed on the merits anyway. See Sanchez v. Time Warner, Inc., No. 98-211-CIV-T-26A, 1998 WL 834345, at *3 (M.D. Fla. Nov. 4, 1998) (dismissing action to recover purportedly unlawful liquidated

damages in part because plaintiff "was aware failure to pay her bill within the specified time period would result in the assessment of a late charge").

Having found that her unlawful penalty claim fails to state a claim upon which relief can be granted, the Court turns to her other pleaded bases for relief.

### 2. Quasi-Contractual Claims

The remaining arrows in plaintiff's quiver are common-law equitable claims for money had and received and unjust enrichment. Unjust enrichment requires a plaintiff to prove that 1) she conferred a benefit upon the defendant, 2) the defendant accepted the benefit and 3) the defendant's retention of the benefit would be inequitable without payment for its value. Mass. Eye & Ear Infirmary v. OLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (interpreting Massachusetts law).  Money had and received is essentially the same claim but is limited to enrichment by money or its equivalent. Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc., 470 F.3d 14, 17 n. 2 (1st Cir. 2006) (interpreting Massachusetts law).

Zipcar asserts that such claims should be dismissed because 1) the late fees paid by Reed and others similarly situated were imposed pursuant to the express terms of an agreed-upon contract and, alternatively, 2) the availability of legal claims bar recovery under equitable causes of action.  Both points are well-

taken.  First, "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006).  Because the Membership Agreement plainly governs the relationship of the parties, Reed is barred from bringing equitable claims sounding in quasi-contract.  Second, the existence of Reed's statutory claim for unfair and deceptive acts and practices precludes her from bringing equitable claims for unjust enrichment and money had and received, remedies available only when a party lacks an adequate remedy at law. Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005).  The viability of her Chapter 93A claim, addressed in the following section, is beside the point; its "mere availability" bars her claims for unjust enrichment and money had and received. Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010).

### 3. Chapter 93A Claim

Plaintiff's final claim arises under the ever-lurking Massachusetts Consumer Protection Act, M.G.L. c. 93A, commonly referred to as "Chapter 93A."  Chapter 93A provides a cause of action to a consumer who suffers a loss as a result of an "an unfair method of competition or an unfair or deceptive act or practice" in the conduct of any trade or commerce." M.G.L. ch. 93A § 2(a), 11.  An act or practice is "unfair" if it is "within at least the penumbra of some common-law, statutory or other

established concept of unfairness," is "immoral, unethical, oppressive, or unscrupulous," and "causes substantial injury to consumers." Mass. Eye & Ear Infirmary, 552 F.3d at 69.  The decision of whether an act or practice qualifies as unfair is generally left to the finder of fact, subject, as all claims are, to the District Court's gate-keeping function. Id.

Zipcar moves to dismiss Reed's Chapter 93A claim on the grounds that it is derivative of other, unviable claims and fails to allege unfair conduct falling within the purview of Chapter 93A.  Reed responds that even if her other claims are dismissed, her Chapter 93A claim should survive because she has pled sufficient allegations that Zipcar's late fees are grossly disproportionate to the damages caused by a customer's breach and are procedurally and substantively unconscionable.

The fact that Reed's other claims have been deemed unsustainable certainly bears upon the likely success of her Chapter 93A claim but does not foreclose its viability.  Although Chapter 93A claims are often linked with and derivative of other statutory and common law claims for relief, it is settled law that Chapter 93A supplies an independent cause of action. In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 184 (1st Cir. 2009) (interpreting Massachusetts law) ("[I]t is neither necessary nor sufficient that a particular act or practice violate common or statutory law.").  As long as a

-11-

litigant offers separate arguments in support of her Chapter 93A claim, it may be entertained irrespective of whether other colorable bases for relief remain. Cf. Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40 (D. Mass. 2006) (dismissing Chapter 93A claim that "hinge[d] on" breach of contract and negligence claims," where plaintiff made "no unique arguments related to [the] Chapter 93A claim" (quoting Egan v. Athol Mem. Hosp., 971 F. Supp. 37, 47 (D. Mass. 1997))).

That is not to suggest that Chapter 93A claims get a free pass at the motion to dismiss stage.  To be sure, most such claims survive motions to dismiss because their fact-intensive nature makes them difficult to resolve before discovery. See Mass. Eye & Ear Infirmary, 552 F.3d at 69.  That does not, however, obviate the need for district courts to screen them to ensure they state plausible grounds for relief. Id.  Accordingly, this Court will evaluate each of the theories pled in support of Reed's Chapter 93A claim to determine whether, if related facts are proven, they entitle her to the relief she seeks.

**Theory One: Zipcar's late fees are grossly disproportionate to the damages caused by a customer's breach**.  Reed submits that many of Zipcar's competitors work with customers to help them avoid late fees whenever possible, closely gauge the charge for late return to the company's loss, provide grace periods and do not charge anything near what Zipcar charges.  She contends that

those allegations plausibly permit the finding that the late fee is grossly disproportionate to the anticipated damages from breach. Reed's proportionality theory misses the mark for two reasons.

First, her allegations do not support a reasonable inference that the damages to Zipcar from late returns would be easy to ascertain.[1] Quite the opposite seems true. She speculates that Zipcar's computer system instantly tracks customer activity and can readily and precisely calculate the costs of late returns but that allegation is fanciful. Quantifying the cost to Zipcar of late returns is not as simple as multiplying the minutes late by an hourly charge. Zipcar must also factor in expenses associated with managing the logistics of late returns (e.g., purchasing extra vehicles, reserving extra spaces and hiring customer-support specialists) and the reputational harm caused by the frequent late return of vehicles. Those factors must be considered not in a static marketplace but in the new and rapidly developing car-sharing market. One would expect under the circumstances that even a sophisticated computer algorithm such as the one purportedly employed by Zipcar could reach widely divergent results upon the slight change of one of the variables.

---

[1] Under Massachusetts law, a necessary predicate to the non-enforcement of a liquidated damages clause is a finding that damages flowing from breach are not difficult to ascertain at the time of contracting. See Kelly v. Marx, 705 N.E.2d 1114, 1117 (Mass. 1999) (rejecting challenge to liquidated damages clause in part because "potential damages were difficult to predict when the agreement was made").

Estimating the damages resulting from late returns thus cannot be done with precision, much less easily.

Second, Reed cannot show that the late fee is "grossly disproportionate" to the expected harm caused by late returns without coming up with a reasonable approximation of that harm. She does not allege, for example, that each late return costs Zipcar only $5 and, while her reference to the late fee policies of competing car-sharing companies is certainly relevant to her proportionality theory, it gets her only part of the way there. Zipcar's competitors may have any number of strategic reasons for charging lower late fees.  As more recent market entrants, they might reduce prices across the board in an attempt to gain market share.  Alternatively, they may choose to recoup their losses from late returns by charging a higher rental rate or by levying other fees and charges.  Another possibility is that their fees <u>do</u> compensate them for late returns but, because of lower overhead costs, late returns cost them less than late returns cost Zipcar.  Even if this Court were to take the average late fee charged by Zipcar's competitors as the measure of expected harm, however, it would be a stretch to characterize Zipcar's only slightly higher late fees as "grossly disproportionate."

**Theory Two: Zipcar's late fees are unconscionable**.  Reed supports her unconscionability theory with allegations that 1) Zipcar has disproportionate bargaining power and uses its

unfair leverage to impose a contract of adhesion on its customers and 2) the fee itself is oppressive because Zipcar profits off late returns.  The foregoing allegations are similar to those pled in support of her proportionality challenge but will be addressed separately here to the extent necessary.

Zipcar's late fee policy is not procedurally unconscionable because Zipcar did no more than enforce the terms of its Membership Agreement, terms to which Reed freely agreed when she became a Zipcar member.  Reed does not allege that Zipcar's late fee policy was concealed from her nor that she was misled about the policy or the circumstances under which late fees would be imposed.  Although Reed claims that the fees are too high, she does not allege that she was coerced into accepting Zipcar's terms.  Her own Complaint makes clear that she had alternatives available to her, including comparable car-sharing companies providing services in the same city, with lower late fees to boot.  Yet Reed chose instead to become a Zipcar member, with full knowledge of Zipcar's late fee policy.

Nor is the late fee policy substantively unreasonable.  Reed is quick to point out that Zipcar's late fees are higher than those of its competitors but that, alone, proves nothing.  The charging of above-market rates is not only insufficient to render a policy substantively unreasonable, it is also one of the hallmarks of capitalism.  In a free-market economy, firms are

free to charge higher prices for their goods and services, just as consumers are free to take their business elsewhere. As long as the letter and spirit of our antitrust laws are not violated, courts are ill-advised to intercede.

Furthermore, Zipcar has good reason for charging high late fees. Zipcar's continued success in the burgeoning car-sharing market depends in no small part on its reputation for reliability among consumers. The car-sharing business model was designed to avoid the inconvenience associated with traditional car-rental services. If cars are consistently unavailable or customers are routinely re-routed to vehicles in different locations, Zipcar's commercial raison d'être disappears. To prevent that from happening, it is well within Zipcar's prerogative to charge above-market late fees, especially because consumers are made aware of the late fees at the outset and Zipcar presents them with a number of feasible alternatives.

### 4.    Conclusion

The allegations pled in support of Reed's case are more robust than those of her predecessor. She substantiates some of her claims about Zipcar's late fee policy by comparing it to the policies of its competitors. She explains why, in her opinion, the late fees are "unlawful," "oppressive" and "disproportionate" instead of merely asserting that they are so. She even proposes solutions to lower the fees or avoid them altogether. Nevertheless,

just as one cannot get blood from a stone, some allegations, no matter how well articulated, do not give rise to a claim for relief.

**ORDER**

In light of the foregoing, defendant's motion to dismiss (Docket No. 17) is **ALLOWED** and the Amended Complaint (Docket No. 13) is **DISMISSED** with prejudice.

**So ordered.**

                                     /s/ Nathaniel M. Gorton
                                     Nathaniel M. Gorton
                                       United States District Judge

Dated July 31, 2012